STATE OF NORTH CAROLINA v. SANFORD VIDEO & NEWS, INC.

No. COA00-949

(Filed 16 October 2001)

**1. Constitutional Law— vagueness—Excessive Fines Clause— dissemination of obscenity statute**

The trial court did not abuse its discretion by fining defendant corporation $50,000.00 under N.C.G.S. § 15A-1340.17(b) for dissemination of obscenity for selling two adult-theme magazines to a police officer in violation of N.C.G.S. § 14-190.1 even though defendant contends N.C.G.S. § 15A-1340.17(b) is unconstitutional on the grounds that the statute is vague or that it violates the Excessive Fines Clause under U.S. Const. amend. VIII and N.C. Const. art. I, § 27, because: (1) the legislature properly delineated the standards that should be followed in setting a fine as punishment for the crime; and (2) defendant's fine is not grossly disproportionate to the crime committed when the crime was a felony, the legislature has determined this crime to be more than minimally harmful to the community, the money to be forfeited was directly related to illegal activities, and the fine is not excessive when compared to defendant's financial resources available to pay the fine.

**2. Obscenity— sexually oriented business—belief engaged in activity protected by Constitution**

The trial court did not abuse its discretion by fining defendant corporation $50,000.00 under N.C.G.S. § 15A-1340.17(b) for dissemination of obscenity for selling two adult-theme magazines to a police officer in violation of N.C.G.S. § 14-190.1 even though defendant contends it believed it was engaged in activity protected by the Constitution, because: (1) dissemination of obscenity is not protected by any constitutional guarantees; (2) defendant has previously been confronted by the laws prohibiting the dissemination of obscenity; and (3) defendant's failure to challenge its underlying conviction for disseminating obscenity means it cannot now challenge its punishment on the theory that its underlying conduct was not illegal.

**3. Obscenity— sexually oriented business—mitigating factor of reasonable belief conduct was legal**

The trial court did not err in a dissemination of obscenity case by failing to find the existence of the N.C.G.S. § 15A-1340.16(e)(1) statutory mitigating circumstance that defendant corporation reasonably believed its conduct was legal, because there is significant reason to doubt defendant's credibility that it presumed its conduct was lawful when defendant's employee was previously convicted of this same offense.

**4. Judgments— form—signature of trial court**

The trial court did not err in a dissemination of obscenity case by allegedly failing to sign the judgment form finding defendant guilty, because: (1) the form provides two areas for the judge's signature including one directly beneath the judgment and the other located at the bottom of the form below the section giving the notice of appeal; and (2) the trial court signed the second signature area at the bottom of the form.

Appeal by defendant from judgment entered 26 August 1996 by Judge Wiley F. Bowen in Lee County Superior Court. Heard in the Court of Appeals 23 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Alexander Charns for defendant-appellant.*

STATE v. SANFORD VIDEO & NEWS, INC.

[146 N.C. App. 554 (2001)]

CAMPBELL, Judge.

Defendant corporation, Sanford Video and News, Inc., was convicted of one count of dissemination of obscenity for selling two adult-theme magazines to a Sanford police officer in violation of N.C. Gen. Stat. § 14-190.1 (1999). Under this statute, a violation is a Class I felony. N.C. Gen. Stat. § 14-190.1(g) (1999). Ordinarily, a defendant, if an individual person, would be subject to imprisonment for this offense. However, as defendant here is a corporation, under our structured sentencing statute it is only subject to a fine. N.C. Gen. Stat. § 15A-1340.17(b) (1999) ("[W]hen the defendant is other than an individual, the judgment may consist of a fine only. Unless otherwise provided, the amount of the fine is in the discretion of the court.") The trial court, in its discretion granted under N.C. Gen. Stat. § 15A-1340.17(b), fined defendant $50,000.00. Defendant now appeals to this Court, finding no fault with the underlying conviction, but with what it argues is an "excessive" fine.

[1] Defendant's first two contentions challenge N.C. Gen. Stat. § 15A-1340.17(b) on the grounds that it is vague, and therefore facially unconstitutional, and that the statute is unconstitutional as applied to defendant. We do not agree.

Defendant alleges that we must find N.C. Gen. Stat. § 15A-1340.17(b), when read in conjunction with N.C. Gen. Stat. § 14-190.1 (the dissemination of obscenity statute), unconstitutional on its face because it is "facially vague." The test for "vagueness" recognized by our Supreme Court holds that "a statute is unconstitutionally vague if it either: (1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for those who apply [the law].'" *State v. Green*, 348 N.C. 588, 597, 502 S.E.2d 819, 824 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227 (1972)).

As defendant did not challenge its conviction, but solely its punishment, defendant's argument only involves the second prong of this test, i.e., whether N.C. Gen. Stat. § 15A-1340.17(b) fails to "'provide explicit standards for those who apply [the law].'" *Id.*

As noted above, when a corporate defendant is charged with a crime punishable under our structured sentencing act, it is only subject to a fine. The amount of the fine is left to the sound discretion of the trial court. Defendant contends that because the amount of the

fine is within the court's discretion, "[o]n its face, the statutory scheme allows a trial judge to set a fine at any amount for a corporate defendant with no prior criminal record."

We begin by noting that "[t]rial judges have broad discretion in determining the proper punishment for crime," and that "[t]heir judgment will not be disturbed unless there is a showing of abuse of discretion, procedural conduct prejudicial to the defendant, or circumstances which manifest inherent unfairness." *State v. Wilkins*, 297 N.C. 237, 246, 254 S.E.2d 598, 604 (1979); *State v. Williams*, 65 N.C. App. 472, 478, 310 S.E.2d 83, 87 (1983). However, this discretion is not unbridled. In exercising its discretion, the trial court must take into account the nature of the crime, the level of the offense, and the aggravating and mitigating factors, just as it would in setting the length of imprisonment for a defendant. In addition, when the punishment allows for a fine, our statutes have provided that "[i]n determining the method of payment of a fine, the court should consider the burden that payment will impose in view of the financial resources of the defendant." N.C. Gen. Stat. § 15A-1362(a) (1999). Therefore, we conclude that the legislature has properly delineated the standards that should be followed in setting a fine as punishment for a crime, and that N.C. Gen. Stat. § 15A-1340.17(b) is not unconstitutional on its face.

We next consider whether N.C. Gen. Stat. § 15A-1340.17(b) is unconstitutional as applied to defendant. Defendant contends that due to the nature of the crime committed and due to defendant's financial situation, a fine of $50,000.00 is in violation of the Excessive Fines Clause, and that the statute is therefore unconstitutional as applied. U.S. Const. amend. VIII; N.C. Const. art. I, § 27. To our knowledge, this issue is one of first impression in North Carolina. Therefore, we look to cases which have been decided by the United States Supreme Court that deal with the Excessive Fines Clause.

The Excessive Fines Clause, as is indicated by its name, prohibits the government from imposing excessive fines as punishment for a crime. As the wording of the clause under our North Carolina Constitution is identical to that of the United States Constitution, our analysis is the same under both provisions. U.S. Const. amend. VIII; N.C. Const. art. I, § 27.

Although the United States Supreme Court had previously discussed the Excessive Fines Clause, it actually applied the clause for the first time in *United States v. Bajakajian*, 524 U.S. 321, 327,

141 L. Ed. 2d 314, 325 (1998), where it held that the forfeiture of $357,144.00 for a violation of a reporting statute, constituted an excessive fine and was thus unconstitutional under the Eighth Amendment.

The defendant in *Bajakajian* pled guilty to a violation of 31 U.S.C. § 5316(a)(1)(A), which made it a crime to transport more than $10,000.00 out of the country without notifying customs officials. Pursuant to 18 U.S.C. § 982(a)(1), a willful violation of this statute required forfeiture of the property involved, which the government argued required a forfeiture of the entire $357,144.00. The United States Supreme Court disagreed, however, stating that due to the punitive nature of the forfeiture, it was in essence a "fine" and thus subject to the Excessive Fines Clause. *Bajakajian*, 524 U.S. at 328, 141 L. Ed. 2d at 325. Turning then to the clause itself, the Court said: "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334, 141 L. Ed. 2d at 329.

The Court then set forth the test to be followed in determining whether a punitive forfeiture is excessive, holding that "a punitive forfeiture violates the Excessive Fines Clause if it is *grossly disproportional* to the gravity of a defendant's offense." *Id.* (Emphasis added.) Under this test, the Court held the forfeiture was unconstitutional, since the offense in question was only a reporting violation and the funds to be forfeited were not the proceeds of any illegal activity, i.e., the funds were not connected to any other crime, and defendant was using the money to pay a lawful debt. The Court further held that the defendant's violation had caused only minimal harm, stating, "[h]ad his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country." *Id.* at 339, 141 L. Ed. 2d 332. Therefore, a forfeiture of the entire $357,144.00 was grossly disproportionate to the gravity of the offense.

We find the grossly disproportionate test to be applicable to the case *sub judice*. Applying this test to the facts before us, we conclude that defendant's $50,000.00 fine for the crime of disseminating obscenity is not grossly disproportionate, and therefore does not violate the Excessive Fines Clause.

Defendant asserts that the $50,000.00 fine imposed by the trial court is excessive because it is disproportionate to the crime com-

mitted. Defendant argues that the offense here, disseminating obscenity, is "the lowest level felony—I—under North Carolina law," and that a $50,000.00 fine is therefore disproportionate to the level of offense. We disagree on several grounds.

First, although disseminating obscenity is a low level felony, it is still a felony offense. This, in and of itself, connotes the seriousness of the crime, unlike that of the reporting violation in *Bajakajian*, which was considered a minor offense. Second, the dissemination of obscenity has been determined by our legislature to be more than minimally harmful to the community in that such dissemination has been made a criminal offense. *Miller v. California*, 413 U.S. 15, 32-33 n.13, 37 L. Ed. 2d 419, 435-36 n.13 (1973) ("Obscene material may be validly regulated by a State in the exercise of its traditional local power to protect the general welfare of its population . . . ."). Third, unlike *Bajakajian*, the money to be forfeited was "unrelated to any other illegal activities." *Id.* at 338, 141 L. Ed. 2d at 332. Here defendant obtained its money directly from the sale of obscene materials—a clear violation of N.C. Gen. Stat. § 14-190.1—and for which the fine of $50,000.00 was imposed as punishment. Other jurisdictions have also found this to be an important consideration. *See Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir. 2000) (recognizing that in determining whether a fine is excessive, the court should take into account the income earned from the illegal activity); *United States v. 300 Blue Heron Farm Lane Chestertown, Md.*, 115 F. Supp. 2d 525, 528 (D. Md. 2000) (holding that the legislative judgment regarding the severity of the offense is one of the most important factors to consider in determining whether a fine is grossly disproportional). Thus, after assessing these factors, we determine that under the gross disproportionality standard, the fine imposed here was constitutional.

We also find no merit in defendant's contention that the fine is excessive when compared to defendant's financial resources available to pay the fine. Although defendant asserts that its tax returns for the two most recent years prior to the indictment showed that it sustained losses of roughly $52,000.00, we find that upon closer examination of the transcript, defendant's tax returns showed significant assets and gross receipts (both years combined) of approximately $858,000.00, and that its losses were mainly due to deductions for depreciation. In addition, we note that "[d]eterrence . . . has traditionally been viewed as a goal of punishment." *Bajakajian*, 524 U.S. at 329, 141 L. Ed. 2d at 326; *see also State v. Oliver*, 343 N.C. 202, 206, 470 S.E.2d 16, 19 (1996). With its financial resources, a lesser fine may

have been seen as an "acceptable price" of conducting business and therefore not a deterrent. We therefore conclude that defendant's $50,000.00 fine was an acceptable punishment and not excessive.

[2] By its next assignment of error, defendant contends that the $50,000.00 fine was excessive because defendant believed it was engaged in activities protected by the Constitution. We do not accept this explanation.

First, this Court has plainly held that "the dissemination of obscenity . . . is not protected by any constitutional guarantees." *Cinema I Video v. Thornburg*, 83 N.C. App. 544, 557, 351 S.E.2d 305, 314 (1986) (emphasis omitted). Second, we note that this is not the first time defendant Sanford Video and News, Inc. has been confronted by the laws prohibiting the dissemination of obscenity. In fact, this Court had the occasion to examine a conviction against another of defendant's employees in 1996, where, as in the case *sub judice*, the employee was charged with disseminating obscenity in violation of N.C. Gen. Stat. § 14-190.1. *See State v. Johnston*, 123 N.C. App. 292, 473 S.E.2d 25 (1996). We therefore have difficulty believing defendant thought its conduct was protected under either the federal or state constitution. Regardless of defendant's beliefs, however, defendant has not challenged its underlying conviction for disseminating obscenity, and cannot now challenge its punishment on the theory that its underlying conduct was not illegal.

[3] Along this same line of thought, defendant next asserts the trial court erred by not finding the existence of statutory mitigating factor number ten, which states that the defendant reasonably believed its conduct was legal. N.C. Gen. Stat. § 15A-1340.16(e)(10) (1999). However, "[t]he failure of the [trial] court to find a factor in mitigation urged by the defendant will not be overturned on appeal unless the evidence in support of the factor is uncontradicted, substantial, and there is no reason to doubt its credibility." *State v. Lane*, 77 N.C. App. 741, 745, 336 S.E.2d 410, 412 (1985). Here, especially given the history of defendant's employee having been convicted of this same offense, there is a significant "reason to doubt [defendant's] credibility" that it presumed its conduct was lawful. *Id.* Thus, we hold the trial court did not err in failing to find statutory mitigating factor ten.

[4] Defendant's final contention is that the trial court erred by failing to sign the judgment form finding defendant guilty. We find this contention to be without merit. The Administrative Office of the Courts ("AOC") form AOC-CR-305 provides two areas for the judge's signa-

ture, one directly underneath the judgment, and the other located at the bottom of the form below the section giving notice of appeal. Therefore, we conclude that as the trial judge signed the second signature area at the bottom of the form, this was sufficient to constitute signing the judgment and that defendant was not prejudiced thereby.

Affirmed.

Judges BIGGS and JOHN concur.